COPY

1 | Philip Heller (State Bar No. 113938)
ph@fhllplaw.com
2 | Peter M.DelVecchio  (SBN 183456)
pmd@fhllplaw.com
3 | **Fagelbaum & Heller LLP**
2029 Century Park East, Suite 3550
4 | Los Angeles, California 90067-3021
Telephone:  (310) 286-7666
5 | Facsimile:  (310) 286-7086

6
7 | Daniel A. Batterman, Esq.
**Law Offices of Daniel A. Batterman**
100 Cambridge Street
8 | Suite 1310
Boston, MA 02114-2509
9 | (617) 259-1600
DBatterman@BattermanLaw.com
10 | Massachusetts B.B.O. No:  631268;

11 | Attorneys for
Plaintiff ANT
12

FILED
CLERK, U.S. DISTRICT COURT

AUG 2 4 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

13 |                 **UNITED STATES DISTRICT COURT**

14 |               **CENTRAL DISTRICT OF CALIFORNIA**

15 |                      **CV11-06975** P (EX)

16 | ANT,
17 |              Plaintiff,                    Civil Action No.: _____
18 | vs.
19 | **ANTHONY McPARTLIN, DECLAN**        <u>**COMPLAINT**</u>
      **DONNELLY, and GALLOWGATE**
20 | **HOLDINGS LIMITED,**                [JURY TRIAL DEMANDED]
21 |              Defendants
22
23
24
25
26
27
28

## PRELIMINARY STATEMENT

1.    This is an action for service mark infringement, unfair competition, false designation of origin, and for prohibition or cancellation of an infringing service mark registration arising under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq., as amended* (the "Lanham Act"), and for service mark infringement, unfair competition, dilution, and unfair business practices under the laws of the State of California.   As set forth below, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 & 1338; 15 U.S.C. §§ 1116 & 1121; and 28 U.S.C. § 1367.

## JURISIDICTION AND VENUE

2.    Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1338; and 15 U.S.C. §§ 1116 and 1121.   Jurisdiction over all other claims is conferred pursuant to 28 U.S.C. § 1367 and in accordance with the principles set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), as said claims are related to those within this Court's original jurisdiction and form part of the same case or controversy.

3.    Personal jurisdiction over all Defendants is conferred upon this Court pursuant to Section 410.10 of the California Code of Civil Procedure.

4.    Venue is proper pursuant to 28 U.S.C. § 1391(d), as Defendants are aliens and may be sued in any judicial district, and as otherwise set forth in § 1391(b)(2) or (c).

5.    This Court has the authority to grant declaratory relief pursuant to 28 U.S.C. § 2201 *et seq.* and/or 15 U.S.C. § 1119.

## PARTIES

6.    Plaintiff, ANT, is a natural person and citizen of the United States who resides in Los Angeles, California.   Plaintiff's original birth name was "Anthony

Steven Kalloniatis."  Plaintiff legally changed his name to "ANT" on July 9, 1993 pursuant to a lawful and valid decree issued by the Superior Court of California, and offers his services to the public solely and exclusively under the ANT name.

7. Defendant, Anthony McPartlin ("McPartlin") is a natural person who is a British citizen and has his principal residence in London.  McPartlin provides his professional services to the public under the name "ANT."  As set forth below, McPartlin has also taken an active part in the hosting and production of television shows within the State of California using the ANT name.  McPartlin's use of the ANT mark occurred long after Plaintiff's bona fide use of the mark in commerce to identify his own services.

8. Defendant, Declan Donnelly ("Donnelly") is a natural person who is a British citizen and has his principal residence in London.  Donnelly provides his professional services to the public under the name "DEC."  As set forth below, Donnelly has also taken an active part in the hosting and production of television shows within the State of California with McPartlin, his partner and co-host, and has actively and knowingly used, exploited, and directly benefited from McPartlin's use of the ANT name, and/or ratified, approved, or sanctioned its use for his own purposes.

9. Defendant, Gallowgate Holdings Limited ("Gallowgate"), is a company duly formed under the laws of England and Wales and was formed and is owned, in whole or in substantial part, by McPartlin and Donnelly.  Gallowgate has a principal place of business at 2 Water Court, Water Street, Birmingham, B31HP United Kingdom.  Gallowgate produces various forms of entertainment for and with McPartlin and Donnelly in a variety of different media including, but not limited to, television, radio, cable, video, audio, and/or the internet.  Gallowgate produces said entertainment using the ANT and DEC names, and has actively done so within the State of California.

# FACTUAL BACKGROUND

<u>PLAINTIFF'S BACKGROUND</u>

10. Plaintiff, ANT, is an acclaimed and nationally-renowned comedian, actor, writer, producer, composer, professional entertainer, and celebrity.

11. During his lengthy career, ANT has appeared in various entertainment media, including, but not limited to, television, movies, radio, video, audio, and throughout the internet.

12. For example, ANT has appeared consistently in numerous TV series, including, but not limited to: "Unhappily Ever After" from 1995 to 1997; "Celebrity Fit Club" from 2005 to 2008; "Steve Harvey's Big Time Challenge" in 2007; "U.S. of ANT" in 2006; "But Can They Sing?" in 2007; "I Love the New Millenium" in 2008; "America's Next Top Model" in 2009; "Issues with Jane Velez-Mitchell" in 2009; and "Celebrity Catch 21" in 2009.

13. ANT also appeared in seasons 1 through 5 as both a contestant and a judge in the NBC television series, "Last Comic Standing," which ran from approximately 2003 to 2008.

14. ANT has also been a regular guest on television shows such as "The Tonight Show with Jay Leno" and has appeared on shows, including, but not limited to: "The Tyra Banks Show;" "The Jamie Foxx Show;" "Kathy Griffin: My Life in the D-List;" "The Dennis Miller Show;" "Celebracadabra;" "Gene Simmons: Family Jewels;" "Mind of Mencia;" "The 40 Greatest Reality TV Moments 2;" "The 100 Most Memorable TV Moments;" "I Love Toys;" "Midnight Money Madness;" "A2Z;" "To Tell the Truth;" and in many other television programs.

15. ANT is also well known for his movie roles and has appeared in movies including "Sister Mary" due to be released in 2011; "Another Gay Movie," released in 2006; "The Underground Comedy Movie," released in 1999; and "Twin Falls Idaho," released in 1999 and which was a Sundance Film Festival official selection for that year.

16.   ANT has also appeared on almost every major radio station in most major cities and markets throughout the United States, including, but not limited to, the "Howard Stern Show" (on both terrestrial and Sirius Satellite Radio), the "Bob and Tom Show," the "Mancow Show," the "Adam Carolla Show," and "Lovelines with Dr. Drew," to name a few such programs.

17.   Moreover, ANT provides live comedic, visual, and audio performances to audiences throughout the United States and the world on an ongoing and continuous basis.

18.   In addition to his many television, movie, radio, and live appearances, ANT has also served as the Executive Producer for the "U.S. of ANT" series and co-composed the main title for the series.

19.   ANT is well known on the internet and throughout "cyberspace."  His official website is "www.ANTcomic.com" and incorporates the use of his service mark throughout.   His website offers recordings of his performances as well as information to the public about, *inter alia*, Plaintiff's entertainment services, background and career, sales of his CD and DVD, and booking information.

20.   Furthermore, Plaintiff's blog, "The ANT Colony," which can be found at "http://blog.nbc.com/ANT" and "www.ANTcomic.com/blog", is a highly ranked celebrity blog and has attracted hundreds of thousands of visitors per year.

21.   ANT has also written, produced, and distributed a CD through Comedy Central Records which showcases his comedic and entertainment talents and abilities.

22.   ANT also released a DVD of one of his live performances, entitled, "ANT: America's Ready."  The Logo network, a broadcast unit of MTV Networks and Viacom, purchased the television broadcast rights for the DVD and has aired it as a comedy special.

23.   Said television programs, movies, websites, radio appearances, personal appearances, CD, DVD, and other media in which ANT appears are distributed

1     and available to the public on a national and international basis.

2   24.   The ANT service mark has been used in commerce since at least July 10, 1993—if not before then—and has been used continuously to identify and distinguish Plaintiff and the services he provides to the public.

5   25.   Plaintiff filed an application to register the ANT service mark at the United States Patent and Trademark Office ("USPTO") on June 15, 2007, in connection with the services named therein, which fall within International Class 41 and are described as follows:

> Entertainment in the nature of live comedic performances; Entertainment in the nature of visual and audio performances, and musical, variety, news and comedy shows; Entertainment in the nature of live performances by a comedian; Entertainment services, namely, personal appearances by a comedian/celebrity; Entertainment services, namely, providing a web site featuring musical performances, musical videos, related film clips, photographs, and other multimedia materials; Entertainment services, namely, live, televised and movie appearances by a professional entertainer; Entertainment services, namely, providing a website featuring, photographic, audio, video and prose presentations featuring comedy.

26.   Said mark was published for Opposition in the USPTO's *Official Gazette* on November 27, 2007.  No oppositions were filed by any party in response thereto.

27.   The ANT service mark was registered by the USPTO on the Principal Register on February 12, 2008.  The Registration Number is 3381276.  *See* Ex. 1.

28.   As such, Plaintiff is the sole owner of the entire right, title, and interest to the valid, unrevoked, and uncancelled federally registered service mark, "ANT."

29.   The registered ANT mark is arbitrary and inherently distinctive, and identifies and distinguishes the source of the services offered to the public by Plaintiff.

30.   The registration of said mark, combined with Plaintiff's use and display of the notice for said registration as set forth 15 U.S.C. § 1111, constitutes actual and constructive notice to Defendants of ANT's ownership and exclusive rights in

1  the ANT mark and his use thereof, thereby allowing for the recovery of

2  damages and profits from Defendants.

3  31.  ANT has extensively marketed, advertised, and promoted his services

4  throughout the United States and the world so that the public readily associates

5  them with Plaintiff and the ANT mark.

6  32.  Plaintiff has invested and spent a considerable amount of money throughout his

7  career marketing, advertising, and promoting his services as ANT.

8  Consequently, the ANT service mark is famous throughout the United States

9  and the world, entitling the mark to greater protection.

10

11  <u>DEFENDANTS McPARTLIN'S AND DONNELLY'S BACKGROUND</u>

12  33.  Defendants McPartlin and Donnelly provide entertainment services in the

13  United Kingdom, the United States, and throughout the world in a variety of

14  different media using their professional names, ANT and DEC.

15  34.  McPartlin and Donnelly do not use their last names in the marketing,

16  advertising, promotion, and distribution of their services, but are otherwise

17  known professionally as ANT and DEC.

18  35.  McPartlin also uses the ANT name when marketing, advertising, and promoting

19  his own entertainment services without Donnelly and when otherwise referring

20  solely to himself in the marketplace or referred to as ANT by others in the

21  public. *See, e.g.*, Ex. 14 at 2-10.

22  36.  At all relevant times herein, McPartlin, Donnelley, and Gallowgate had actual

23  or constructive knowledge of Plaintiff's pending registration and/or use of the

24  ANT mark and knew that their pending registration for "ANT & DEC" or use

25  thereof was likely to and would cause confusion in connection with the

26  marketing, advertising, promotion, and distribution of their services or would

27  otherwise cause mistake or deceive the public.

28  37.  From 1995 to 1996, McPartlin and Donnelly starred in "The ANT & DEC

Show," which aired on the Children's British Broadcasting Corporation.  Said show aired in the United Kingdom and was classified as a sketch comedy program.

38.  McPartlin and Donnelly also starred in "ANT & DEC Unzipped" in 1997, which aired on television in the United Kingdom and was also classified as a comedy show.

39.  McPartlin and Donnelly also hosted "ANT & DEC'S Saturday Night Takeaway" from 2002 through 2008.  Defendant Gallowgate produces said show.  Said program was also classified as a comedy program and won a British Comedy Award in 2005. *See also* ¶ 109, *infra. See also* Ex. 19.

40.  In fact, McPartlin and Donnelly have appeared on and participated consistently in the "British Comedy Awards," a televised comedy program airing throughout the United Kingdom and elsewhere, from approximately 2001 through 2006, as ANT and/or DEC.

41.  From 2001 through at least 2007, McPartlin and Donnelly have appeared on and participated consistently in "Comic Relief," a televised comedy program airing throughout the United Kingdom and elsewhere, as ANT and/or DEC.

42.  McPartlin and Donnelly have also hosted, presented, and appeared in numerous other television programs and media in the United Kingdom and elsewhere as ANT and/or DEC, including but not limited to, "Britain's Got Talent."  Some of these programs have been classified as "variety shows" or shows involving "musical performances."

43.  While many of McPartlin's and Donnelly's programs, appearances, and shows have aired primarily (but not exclusively) throughout the United Kingdom, they are also marketing, advertising, and promoting themselves as ANT and/or DEC throughout the United States' entertainment markets as well.

44.  In the United States, McPartlin and Donnelly hosted "Wanna Bet?", a television show that aired on the ABC network in 2008, as ANT and DEC.  Said show

1    was produced, marketed, advertised, and promoted by The Gurin Company

2    ("Gurin"), a California production company, in conjunction and association

3    with Gallowgate.

4    45.   "Wanna Bet?" was filmed entirely in Los Angeles, California at the CBS

5          Radford Studios.   As hosts of the program, McPartlin and Donnelly were

6          physically present in the State of California while "Wanna Bet?" was being

7          filmed and produced for nationwide distribution by ABC, and otherwise

8          directed—and continue to direct—their business, entertainment, and other

9          activities into this State.

10   46.   Furthermore, discussions and negotiations relating to "Wanna Bet?" took place

11         in Los Angeles via personal meetings with McPartlin, Donnelly, Gallowgate,

12         and Gurin, or their representatives thereof, and/or via telephone conferences

13         and e-mail exchanges.

14   47.   In addition to the "Wanna Bet" program, which was cancelled in September of

15         2008, McPartlin and Donnelly are also attempting to secure other forums,

16         venues, programs, and media outlets throughout the United States in which to

17         offer their entertainment services to the public as ANT and/or DEC.

18   48.   For example, in a June 24, 2009 video blog entry posted on Defendants'

19         website, "OfficialAntandDec.com," McPartlin stated that "Simon Cowell

20         constantly . . . wants us to go work in America."

21   49.   Indeed, as set forth in Exhibit 2, a June 4, 2010 article, McPartlin and Donnelly

22         were rumored to be under consideration as the hosts for "World's Got Talent,"

23         a highly anticipated Simon Cowell-produced television show that was planning

24         to launch in the near future, including in the United States.   McPartlin and

25         Donnelly would host the program utilizing the ANT mark.

26   50.   In addition, ten (10) months prior to the June 4th article, in an August 24, 2009

27         article, attached hereto as Exhibit 3, Donnelly stated that Defendants were in

28         the process of starting an American version of "Saturday Night Takeaway,"

another television show they host as ANT and DEC in the United Kingdom: "We've been in talks about taking Takeaway to America, but it's about finding enough time to do it." *Id.*

51. While it is unclear what the status is of these proposed programs and McPartlin and Donnelly's potential hosting duties, Defendants continue in their attempts to make inroads into the United States using the ANT mark.

52. In fact, in an October 6, 2010 conversation with Defendants' California counsel, Kevin J. Leichter, Esq., although Attorney Leichter would not discuss the status of his clients regarding the possible "World's Got Talent" program, he stated to Plaintiff's counsel that McPartlin and Donnelly were still interested in establishing a presence in the American entertainment market despite the failure of "Wanna Bet?".

53. Consequently, Defendants' sustained efforts and the actual confusion which has resulted represent continuing and ongoing infringement of the ANT mark. As set forth below, Plaintiff learned that Defendants' use of the ANT mark has caused significant actual confusion in the entertainment marketplace. *See* ¶¶ 87-104, *infra. See also* Exs. 10-17.

54. In any instance, Gallowgate is also in the process of attempting to obtain a service mark registration at the USPTO for "ANT & DEC" (serial no. 77137929). The application for said mark was filed at the USPTO on March 22, 2007. *See* Ex. 4.

55. The presence of "DEC" in the ANT & DEC mark does not significantly alter the mark's overall commercial impression. Consequently, the ANT & DEC mark is likely to cause and is causing confusion in the marketplace, and/or causing mistake or deception. *See* 1200 <u>Trademark Manual of Examining Procedure</u> [hereinafter "T.M.E.P"] § 1201.01(b)(i) ("The points of comparison for a word mark are appearance, sound, meaning, and commercial impression.").

56.   In fact, the addition of the ampersand to the "ANT & DEC" mark, which is the character equivalent of the common conjunction, "and," is more likely to further cause and causing confusion in the marketplace by implying that Plaintiff endorses or is otherwise sponsored, connected, affiliated, or has a relationship with Defendants. *See, e.g., In re Riddle*, 225 U.S.P.Q. 630 (T.T.A.B. 1985) (RICHARD PETTY'S ACCU TUNE and design for automotive service stations held likely to be confused with ACCUTUNE for automotive testing equipment).

57.   Furthermore, in its application for registration, Gallowgate listed its services as:

> [E]ntertainment services, namely, providing a variety show via television, cable, radio, satellite, audio, video, or online media; entertainment services in the nature of live musical performances and live music concerts; production of television and radio shows; production of radio entertainment, including online; provision of talk shows; personal appearances by entertainers and celebrities; production of game shows. (*See* Ex. 4.)

58.   Plaintiff expressly offers "entertainment services" in association with his registered mark in the "variety show," "musical performances," and "personal appearances" areas as well. *See* Ex. 1.

59.   Gallowgate's, McPartlin's, and Donnelly's listed services overlap and converge with ANT's services and utilize the same marketing and distribution channels in the same industry thereby likely to cause and causing confusion, mistake, or deception in the marketplace.

60.   Moreover, said listing does not accurately, fully, and completely describe the range of entertainment services actually and currently offered by McPartlin and Donnelly.

61.   Gallowgate, McPartlin, and Donnelly were aware prior to submission of their application to the USPTO that said listing does not accurately, fully, and completely describe the range of entertainment services that they offer to the

public, and intentionally and knowingly omitted "comedy" from said listing due to the presence of Plaintiff's pending registration and/or Plaintiff's long-term use of the ANT mark.

62. Defendants knew and were otherwise aware that many of the shows and programs in which they appeared, hosted, or produced were, in fact, classified as "comedy" and/or otherwise knew that the services provided by McPartlin and Donnelly were comedic in nature.

63. Furthermore, during the marketing and promotion of the "Wanna Bet?" television program, ABC stated on its website that the show "is hosted by . . . comedians Ant and Dec." *See* Ex. 5.

64. In another part of its website, ABC stated that the show is "[h]osted by . . . comedy sensations Ant and Dec." *See* Ex. 6.

65. McPartlin and Donnelley are, at all relevant times herein, wholly and completely in control of the way in which they were described, marketed, advertised, and promoted by ABC and/or other media outlets.

66. Said descriptions on the ABC website appeared at the direction, guidance, or request of McPartlin, Donnelly, and/or Gallowgate, or with the endorsement, ratification, or consent thereof.

67. At all relevant times herein, McPartlin, Donnelly, and/or Gallowgate had knowledge and/or were otherwise aware that the "Wanna Bet" show would be sold to ABC and/or would be broadcast nationally throughout the United States on a major television network.

68. McPartlin ("ANT") has also admitted that his services overlap and converge in the comedy area. In an interview posted on the ABC.com website promoting "Wanna Bet?", attached hereto as Exhibit 7, the interviewer asked:

> **[Interviewer:]**   With a "Can they really do it?" tone, this weekly event is part comedy, part reality, part nail-biting drama. How would you classify the show?

**Ant:**     You've hit the nail right on the head, it really is a
bit of everything.

69.   Moreover, to the extent that said entertainment services do not currently overlap or converge with Plaintiff's services, McPartlin's and Donnelly's services are substantially related to Plaintiff's entertainment services and are likely to cause and causing confusion, mistake, or deception.  *See, e.g.,* 1200 T.M.E.P. § 1207.01(a)(i) ("The goods or services do not have to be identical . . . to determine that there is a likelihood of confusion.  The inquiry is whether the goods are related, not identical. . . . It is sufficient that the goods or services of the applicant and the registrant are so related that the circumstances surrounding their marketing are such that they are likely to be encountered by the same persons under circumstances that would give rise to the mistaken belief that they originate from the same source." (citation omitted)).

70.   Under the "Expansion of Trade Doctrine," Plaintiff is "entitled to protection against the registration of a similar mark on products [or services] that might reasonably be expected to be produced by him in the normal expansion of his business.  The test is whether purchasers would believe the product or service is within the registrant's logical zone of expansion."   1200 T.M.E.P. § 1207.01(a)(v).

71.   Under said doctrine, as well as other established trademark principles, Plaintiff is also entitled to protection against actual use of the same or confusingly similar mark in commerce.

72.   Despite the similarity of appearance, sound, meaning and commercial impression of the marks, as well as the identicality, similarity, and relatedness of the offered services, and the otherwise infringing aspects of the ANT & DEC mark, it may be registered at the USPTO absent action by this Court.

73.   According to a March 10, 2008 "Final Office Action," attached hereto as Exhibit 8, the USPTO has deemed that "[t]he current wording 'production of

1    radio entertainment, including online' used to describe the services needs

2    clarification because the phrase 'including online' is too vague." *Id.*

3    74.  In a September 10, 2008 "Request for Reconsideration," attached hereto as

4    Exhibit 9, Gallowgate adopted the USPTO's revised identification of services

5    and would accept the description without the above language.   Thus,

6    Gallowgate "submits that it has fully satisfied all outstanding requirements of

7    the office action." *Id.*

8    75.  However, the omitted language or revised identification does not substantively

9    change the application or the description of McPartlin's and Donnelly's

10   services and is still likely to cause and causes confusion, mistake, or deception

11   by their use and/or registration of said mark.

12   76.  Shortly after the first complaint was filed, the parties through their counsel,

13   jointly moved to suspend the proceeding at the USPTO pending the resolution

14   of the initial case, which the USPTO allowed.[1]

15   77.  Moreover, "Wanna Bet?" was considered to be a "flop" and was not well-

16   received by either the public or by critics, thereby directly associating Plaintiff,

17   through use of his ANT mark, with a program deemed to be a ratings failure

18   and thus affecting his reputation, goodwill, and business.

19   78.  As highlighted shortly, due to the actual confusion caused by Defendants' use

20   of the ANT mark, "Wanna Bet" has unquestionably been associated and

21   affiliated with Plaintiff, which continues to this day. *See* ¶¶ 87-104, *infra.*

22   79.  Despite the poor showing for "Wanna Bet?", Defendants—as discussed

23

24   [1] All Defendants (and Gurin) were first named in a suit that Plaintiff filed at the District Court in

25   Massachusetts in September of 2008, but the Court (Zobel, D.J.) dismissed them for lack of personal
     jurisdiction in October of 2009 and transferred the remainder of the case involving Gurin to the

26   Central District of California.  Plaintiff then filed an amended complaint in April of 2010 in this
     Court re-naming Gallowgate, McPartlin, and Donnelly (C.A. No. CV09-7672).   Defendants,

27   however, eventually contested service (as they reside in the United Kingdom), but the Court—which
     briefly mentioned the issue yet never formally addressed it as no motion was ever filed by them—

28   dismissed the case against Gurin in August of 2010 and closed it completely shortly thereafter. As
     such, Plaintiff files the instant action.

1    earlier—have attempted and are still attempting to establish themselves in the
2    American entertainment market by using the ANT mark, thereby continuing to
3    infringe Plaintiff's mark. *See* ¶¶ 48-50, *supra*. *See also* Exs. 2 and 3.

4    80.   Furthermore, prior to appearing on "Wanna Bet?", McPartlin and Donnelly
5    were, upon information and belief, required to join the American Federation of
6    Television and Radio Artists ("AFTRA"), a performers' union that represents
7    actors in radio and television.

8    81.   Upon information and belief, AFTRA's policies, procedures, rules, and/or
9    precedents prohibit two performers from sharing the same professional name.

10   82.   As noted above, Plaintiff has been using the ANT mark since at least 1993,
11   which is the same year he joined AFTRA.  As the mark is also Plaintiff's legal
12   surname, Plaintiff joined said union as "ANT."

13   83.   Upon information and belief, McPartlin and Donnelly joined AFTRA long after
14   ANT's membership in 1993.

15   84.   McPartlin and Donnelly actively used the ANT name to identify themselves in
16   the marketing, advertising, and promotion of the "Wanna Bet?" show and have
17   and will likely continue to do so in any other entertainment programs or venues
18   that they can secure in the United States.

19   85.   By so doing, McPartlin and Donnelly have not only caused confusion in the
20   marketplace, but have knowingly violated AFTRA's policies, procedures, rules,
21   and/or precedents.

22   86.   As such, McPartlin's and Donnelly's use of the ANT name constitutes express
23   bad faith by Defendants.

24

25   EVIDENCE OF ACTUAL CONFUSION

26   87.   Defendants' use of the ANT mark has created numerous instances of actual and
27   ongoing confusion, only some of which are highlighted below.

28   88.   Plaintiff first became aware of the confusion that Defendants' use of the ANT

1   mark caused when a colleague, J Graigory ("Graigory"), contacted him about

2   his supposed appearance on "The Jimmy Kimmel Show." *See* Ex. 10.

3  89.  Plaintiff, however, was not scheduled to appear—and has never appeared—on

4   the Kimmel program.   Graigory confused ANT with McPartlin, who was

5   scheduled to appear on the program to promote "Wanna Bet?", when Graigory

6   saw the name "ANT" written on the show's production board.

7  90.  Shortly thereafter, Plaintiff was contacted by Mark Degenkolb ("Degenkolb"),

8   who was a Talent Manager with HandPrint entertainment, a leading Los

9   Angeles talent management company.   Degenkolb believed that Plaintiff was

10   hosting "Wanna Bet?" after learning that it was being hosted by "ANT and

11   DEC."

12  91.  These were not isolated instances.  Plaintiff learned of many other examples of

13   actual confusion that Defendants' use of the ANT mark has caused upon their

14   entry into the American entertainment market.

15  92.  TV Guide, which is a prominent entertainment publication, also confused ANT

16   with McPartlin and Donnelly.  As shown in Exhibit 11, which is a biographical

17   listing for ANT on TV Guide's website entitled, "Ant: TV Guide News," there

18   are seven (7) supposed entries about Plaintiff's television shows.   Of these,

19   there are *two (2) listings (i.e., the first and fifth) in which ANT & DEC and*

20   *"Wanna Bet?" are discussed*.  The very first listing, dated August 13, 2008,

21   reads as follows:

> Cheers to ABC for taking a chance on *Wanna Bet?*. The quietly
> endearing reality show, in which celebs wager on whether contestants
> can pull off stupid human tricks like squeezing an entire marching band
> inside a van, was flailing on Monday nights . . . . I wouldn't be surprised
> if its hosts, Ant and Dec (the charming comic duo imported from
> *Britain's Got Talent*), eventually become stars stateside. Anybody
> wanna bet?

27  93.  While this information would have been appropriate under McPartlin's and

28   Donnelly's biographical listing on the TV Guide site, it (and another) *appeared*

1    *under ANT's listing instead*.  This is a compelling instance of confusion given

2    <u>TV Guide</u>'s status as a distributor and purveyor of entertainment information to

3    the public.

4    94.   Another significant instance of confusion appeared on the "FilmMagic.com"

5          website, attached hereto as Exhibit 12.  FilmMagic is a division of Getty

6          Images, Inc., the well-known media outlet which "provides media companies

7          worldwide with immediate access to high-quality celebrity, music and fashion

8          photography." *Id.*

9    95.   When the term "ANT" is used to search for photographs of Plaintiff, *three (3)*

10         *are displayed with Defendant's name, "Ant McPartlin*," thereby mistakenly

11         identifying the Plaintiff as McPartlin.  *Id.*  Like <u>TV Guide</u>, this is another

12         compelling instance of confusion as FilmMagic is also a major provider of

13         media information to the public.

14   96.   Exhibit 13 is a web page from the site, "UrbanDictionary.com".   Urban

15         Dictionary is a highly-trafficked website that started in 1999 which currently

16         contains over 10.5 million definitions of various cultural terms.   The site

17         describes ANT as follows:  "American Comedian who rose to prominece [sic]

18         on Last Comic Standing. He is the host of Vh1's Celebrity Fit Club. *In 2008*

19         *he co-hosted ABC's Wanna Bet*." *Id.* (emphasis added).  *Id.*  Thus, like TV

20         Guide, ANT's professional background and history is being confused with

21         McPartlin's.

22   97.   Exhibit 14 shows a series of photographs from the website, BuddyTV.com.

23         The first page lists biographical information about ANT.  *Id.*  However, of the

24         eight (8) photographs which appear on the left side of the first page, *only the*

25         *one in the upper left corner is actually of Plaintiff*. *Id.* at 1.  *The other seven*

26         *(7) photos are of <u>Donnelly</u>*.  Again, there is significant actual confusion.

27   98.   Moreover, the other BuddyTV pages show three (3) photos of Donnelly and six

28         (6) of McPartlin.  *See id.* at 2-10.  While all of the photos contain the name

"ANT," what is most significant is the term "Celebracadabra" which appears directly underneath. "Celebracadabra" was an American television show *featuring Plaintiff and __not__ McPartlin or Donnelly*. Yet these photographs all mistakenly associate McPartlin and/or Donnelly with ANT's professional history, providing additional evidence of confusion.

99. Exhibit 15 shows a listing of Plaintiff's television appearances taken from the TVRage.com website. "Jimmy Kimmel Live" appears directly underneath "Episode Cast Credits." *Id.* As highlighted earlier, *Plaintiff was never on the Kimmel program—McPartlin and Donnelly were.* *See* ¶¶ 88-89, *supra*. Nevertheless, this site has also confused ANT's professional history and other information with that of Defendants.

100. On June 23, 2009, Plaintiff was scheduled to meet with the company, ActiveSubmissions.com, which updates entertainers' biographical and professional information. At the office, ANT was given an intake form which had already been partially completed by the company. Under "Name," it read: "Ant (McPartlin)". *See* Ex. 16. When he asked where the company obtained this information, an employee stated that she had found it on the internet and "assumed" it was Plaintiff.

101. On May 8, 2009, about a month prior to the ActiveSubmissions incident, Plaintiff experienced another instance of confusion as he was entering a comedy club at which he was performing. He encountered an excited British woman waiting in line and asked her who she was there to see. She stated to Plaintiff that she thought she was going to see McPartlin, as the club's marquee prominently advertised that "ANT" was performing there. *See* Ex. 17.

102. While there are even more instances of actual confusion in various media outlets between Plaintiff and Defendants and their ongoing and continuous use of the ANT mark, the examples cited herein readily establish, *inter alia*, that Plaintiff has stated a colorable infringement claim.

103. Furthermore, even though Defendants often use the ANT and DEC names jointly as a duo, *e.g.*, "ANT & DEC"—as opposed to Plaintiff who is a solo entertainer—there are instances when McPartlin uses the ANT name by itself solely when promoting himself and/or his own entertainment services.

104. Moreover, regardless of how Defendants identify and brand themselves, the above examples of actual confusion readily indicate that the public and others in the entertainment market have nevertheless confused Plaintiff with Defendants despite any supposed dual/solo distinction, which is irrelevant in the context of this case.

## SCANDALS INVOLVING McPARTLIN AND DONNELLY

105. In addition to the confusion highlighted above, McPartlin and Donnelly, using their names ANT and DEC, have been involved in several scandals involving their television shows in the United Kingdom.

106. For example, on or about May 8, 2008, the Office of Communications ("OFCOM"), which is the independent regulator and competition authority for the communication industries in the United Kingdom, fined "ANT & DEC's Saturday Night Takeaway" television show approximately $6 million (£3 million) for, *inter alia*, choosing finalists before the competition was closed, not following the show's terms and conditions, and failing to choose competition entrants randomly. *See* Ex. 18.

107. OFCOM fined another show starring McPartlin and Donnelly, "ANT & DEC's Gameshow Marathon," approximately $2.4 million (£1.2 million) for, *inter alia*, failing to choose competition entrants randomly. *Id.*

108. Another show starring McPartlin and Donnelly, "I'm a Celebrity, Get Me Out of Here!" was also found to have violated OFCOM's rules. *Id.*

109. In addition, in May of 2008, it was determined that McPartlin and Donnelly improperly won a 2005 British Comedy Award after it was exposed that

1    another performer had actually garnered more votes and should have won the
2    award instead. *See* Ex. 19.

3    110.  Due to the similarity of Plaintiff's and McPartlin's & Donnelly's marks, as well
4          as the identical or related entertainment services that said marks designate in the
5          stream of commerce—combined with the many instances of confusion that
6          have already been documented between the parties—such wrongdoing,
7          controversies, and scandals by McPartlin and Donnelly dilute and tarnish
8          Plaintiff's goodwill and harm the reputation of ANT and his mark.

9

10                                    **COUNT I**
11                                **DECLARATORY RELIEF**
12                                  **(15 U.S.C. § 1119)**

13   111.  Plaintiff repeats and reavers the allegations contained in Paragraphs 1 through
14         110 above and incorporates them herein by reference as though set forth in full.

15   112.  An actual justiciable dispute and controversy exists between the parties.

16   113.  The ANT service mark and the goodwill associated with it in the United States
17         and throughout the world is of great and incalculable value, inherently
18         distinctive and arbitrary, and has become associated in the public mind with the
19         services and reputation of Plaintiff.

20   114.  The pending service mark registration at the USPTO for the "ANT & DEC"
21         mark is likely to cause and causes confusion and misleads and deceives the
22         public, and otherwise causes mistake as to the source of Defendants' services,
23         permits Defendants to pass off their services as Plaintiff's services, and falsely
24         suggests an affiliation, connection, association, or endorsement between
25         Plaintiff and Defendants, all to the damage and detriment of Plaintiff's
26         reputation, goodwill, and business.

27   115.  Consequently, Plaintiff requests that this Honorable Court declare that
28         Defendants' mark, "ANT & DEC", be prohibited from registration at the

1    USPTO or, if said registration has already issued, declare that said registration
2    be cancelled and order the Director of the USPTO to take any other actions that
3    the Court deems just and proper.

4

5                                **COUNT II**

6                **FEDERAL SERVICE MARK INFRINGEMENT**

7                             **(15 U.S.C. § 1114)**

8    116.  Plaintiff repeats and reavers the allegations contained in Paragraphs 1 through
9          115 above and incorporates them herein by reference as though set forth in full.
10   117.  The ANT service mark and the goodwill associated with it in the United States
11         and throughout the world is of great and incalculable value, inherently
12         distinctive and arbitrary, and has become associated in the public mind with the
13         services and reputation of Plaintiff.
14   118.  Defendants' use of Plaintiff's mark is likely to cause and causes confusion and
15         misleads and deceives the public, and otherwise causes mistake, as to the source
16         or origin of Defendants' services, and falsely suggests an affiliation,
17         connection, or association between Plaintiff and Defendants, all to the damage
18         and detriment of Plaintiff's reputation, goodwill, and business.
19   119.  Defendants thereby infringed Plaintiff's mark.
20   120.  Plaintiff has no adequate remedy at law and, if Defendants' activities are not
21         enjoined, Plaintiff will continue to suffer irreparable harm and other damage
22         and injury to his goodwill, reputation, and/or business.

23

24                               **COUNT III**

25        **UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**

26                            **(15 U.S.C. § 1125(a))**

27   121.  Plaintiff repeats and reavers the allegations contained in Paragraphs 1 through
28         120 above and incorporates them herein by reference as though set forth in full.

FAGELBAUM &
HELLER LLP

122. Defendants' use of Plaintiff's mark is likely to cause and causes confusion and misleads and deceives the public, and otherwise causes mistake, as to the source of Defendants' services, and falsely suggests an affiliation, sponsorship, authorization, approval, connection, or association between Plaintiff and Defendants, all to the damage and detriment of Plaintiff's reputation, goodwill, and business.

123. Moreover, as set forth above, the "Wanna Bet?" show in particular was considered to be a "flop" and was not well-received by either the public or by critics, thereby directly associating Plaintiff, through use of his ANT mark, with a program deemed to be a ratings failure and thus further affecting his reputation, goodwill, and business.

124. Defendants' acts are in violation of 15 U.S.C. § 1125(a), in that Defendants' use of Plaintiff's mark is connection with their services in interstate commerce constitutes false designation of origin and unfair competition.

125. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damage to his mark and other damages in an amount to be proven at trial.

126. Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and other damage and injury to his goodwill, reputation, and/or business.

## COUNT IV
## COMMON LAW SERVICE MARK INFRINGEMENT

127. Plaintiff repeats and reavers the allegations contained in Paragraphs 1 through 126 above and incorporates them herein by reference as though set forth in full.

128. Plaintiff has established through prior use and registration a valid and protectable interest in the ANT mark in connection with the performance of his professional services, and has built and created valuable goodwill in that mark.

129. With full knowledge of Plaintiff's mark and the fame of that mark, Defendants

have subsequently and without authorization of any kind from Plaintiff, used the same and/or a similar mark in connection with their provision of professional services of the same kind as Plaintiff provides and has provided at all times relevant to this action.

130.  With full knowledge of Plaintiff's mark and the fame of that mark, Defendants have traded and continue to trade on the goodwill associated with the ANT mark, and to mislead and/or deceive the public into assuming a connection, affiliation, or relationship between Plaintiffs and Defendants where none exists.

131.  Defendants' acts of service mark infringement are likely to cause, and actually have caused, consumer confusion, mistake and deception, and are likely to mislead, and actually have misled, the public as to the source of Defendants' services. Defendants' acts of infringement have also permitted Defendants to pass off their services as Plaintiff's services, and falsely suggest an endorsement, connection, affiliation, or relationship between Defendants and Plaintiff and, unless restrained by this Court, will continue to do so in violation of the common law of the State of California, and to the detriment of Plaintiff, his business and reputation, and to the unjust enrichment of Defendants.

132.  Defendants' acts of infringement have caused and will continue to cause Plaintiff irreparable harm unless restrained by this Court.

133.  Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and other damage and injury to his goodwill, reputation, and/or business.

**COUNT V**

**COMMON LAW UNFAIR COMPETITION**

134.  Plaintiff repeats and reavers the allegations contained in Paragraphs 1 through 133 above and incorporates them herein by reference as though set forth in full.

135.  Plaintiff has invested substantial time and money in the development of the

ANT mark and has consequently built and created valuable goodwill in that mark.

136. Defendants have misappropriated the ANT mark at little or no cost.

137. Defendants' use of the ANT mark is likely to and does permit Defendants to pass off their services as those of Plaintiff, to the detriment of Plaintiff and the unjust enrichment of Defendants.

138. Defendants, with full knowledge of the fame of Plaintiff's mark, have misled and deceived, and will continue to mislead and deceive, the public into believing that or assuming or suggesting an endorsement, connection, affiliation, or relationship between Defendants and Plaintiff.

139. Defendants' unauthorized use of the ANT mark has caused and is likely to cause Plaintiff damage in several ways, including without limitation, by tarnishing his valuable reputation. Defendants have further passed off their services as Plaintiff's services by their use of the ANT mark to the public, members of which are likely to believe and do believe that Defendants' services originate, emanate, or derive from, or are endorsed, connected, affiliated, or associated with Plaintiff.

140. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damage to his valuable mark, and other damages to be proven at trial.

141. Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to his goodwill, reputation, and/or business.

## COUNT VI

### VIOLATION OF CALIFORNIA UNFAIR BUSINESS PRACTICES ACT

### (California Business & Professions Code § 17200 *et seq.*)

142. Plaintiff repeats and reavers the allegations contained in Paragraphs 1 through 141 above and incorporates them herein by reference as though set forth in full.

143. As alleged herein, Defendants have engaged in, and continue to engage in, unlawful, unfair, and fraudulent business acts and practices in violation of the California Unfair Business Practices Act (the "Act"), California Business & Professions Code § 17200, *et seq.* by, *inter alia*, infringing upon and diluting the ANT mark in violation of several federal statutes and by committing common law service mark infringement and unfair competition.

144. As a direct and proximate result of these violations, Plaintiff has suffered and continues to suffer great harm, entitling him to relief under the Act, including without limitation, restitution and injunctive relief.

## COUNT VII

### WRONGFUL USE OF REGISTERED CALIFORNIA MARK

### (California Business & Professions Code § 14245(a)(1)

145. Plaintiff repeats and reavers the allegations contained in Paragraphs 1 through 144 above and incorporates them herein by reference as though set forth in full.

146. ANT is the registered owner of the service mark ANT pursuant to the California Model State Trademark Law, California Business & Professions Code § 14200, *et seq*. Pursuant to the Certificate of Registration of Service Mark pertaining to the ANT mark, the date of the registration was January 4, 2010, and the mark was first used in California on July 9, 1993.

147. As alleged herein, Defendants, individually and/or jointly, have unlawfully used the ANT mark without the consent of the registrant, ANT, in offering services in California and elsewhere.

148. Defendants' use of the ANT mark is likely to cause confusion and/or mistake, and/or to deceive as to the source of origin of the services, and has in fact caused confusion, mistake and deceit as to the source or origin of Defendants' services.

149. Plaintiff has suffered great harm as a direct and proximate result of Defendants'

1    wrongful use of the ANT mark.

2

3                          **COUNT VIII**

4    **WRONGFUL REPRODUCTION OF REGISTERED CALIFORNIA MARK**

5              **(California Business & Professions Code § 14245(a)(2)**

6    150.  Plaintiff repeats and reavers the allegations contained in Paragraphs 1 through

7              149 above and incorporates them herein by reference as though set forth in full.

8    151.  ANT is the registered owner of the service mark ANT pursuant to the California

9              Model State Trademark Law, California Business & Professions Code § 14200,

10             *et seq*. Pursuant to the Certificate of Registration of Service Mark pertaining to

11             the ANT mark, the date of the registration was January 4, 2010, and the mark

12             was first used in California on July 9, 1993.

13   152.  Defendants, individually and/or jointly, without the consent of ANT, have

14             reproduced, counterfeited, copied, and/or colorably imitated the ANT mark and

15             applied it to labels, signs, prints, packages, wrappers, receptacles, or

16             advertisements intended to be used and actually used in connection with the

17             provision and offering by Defendants, individually and/or jointly, of services in

18             California.

19   153.  Plaintiff has suffered great harm as a direct and proximate result of Defendants'

20             wrongful reproduction and use of the ANT mark.

21

22                          **COUNT IX**

23   **WRONGFUL ASSISTANCE IN VIOLATION OF REGISTERED**

24                    **CALIFORNIA MARK**

25             **(California Business & Professions Code § 14245(a)(3)**

26   154.  Plaintiff repeats and reavers the allegations contained in Paragraphs 1 through

27             153 above and incorporates them herein by reference as though set forth in full.

28   155.  ANT is the registered owner of the service mark ANT pursuant to the California

1    Model State Trademark Law, California Business & Professions Code § 14200,

2    et seq. Pursuant to the Certificate of Registration of Service Mark pertaining to

3    the ANT mark, the date of the registration was January 4, 2010, and the mark

4    was first used in California on July 9, 1993.

5    156.   Defendants, individually and/or jointly, have knowingly facilitated, enabled, or

6    otherwise assisted each other in providing services using and bearing

7    reproductions, counterfeits, and/or colorable imitations of the ANT mark

8    without the consent of ANT.

9    157.   Pursuant to the requirements of California Business and Professions Code §

10    14245(a)(3), ANT has sent a proper written demand to cease and desist

11    accompanied by a copy of the certificate or registration of the ANT mark and

12    by a claimed reproduction, counterfeit, copy, or colorable imitation of the ANT

13    mark and a statement, made under penalty of perjury, to each Defendant by a

14    delivery method that complies with the requirements of said statute.

15    158.   Plaintiff has suffered great harm as a direct and proximate result of Defendants'

16    wrongful facilitation of the violation of the ANT mark.

17

18    **COUNT X**

19    **DILUTION OF REGISTERED CALIFORNIA MARK**

20    **(California Business & Professions Code § 14247)**

21    159.   Plaintiff repeats and reavers the allegations contained in Paragraphs 1 through

22    158 above and incorporates them herein by reference as though set forth in full.

23    160.   As alleged herein, the ANT mark is famous and distinctive in that it is widely

24    recognized by the general consuming public of California, and/or by a

25    geographic area of California, as a designation of source of the services of the

26    mark's registered owner, ANT.

27    161.   Defendants, wrongfully and without ANT's consent or permission, have used

28    the ANT mark commercially in connection with the offering and provision of

1    their services.

2    162.   Defendants' wrongful use of the ANT mark occurred after the mark had

3    become famous. That use is likely to cause dilution of the famous mark and has

4    in fact caused dilution of the famous mark.

5    163.   Plaintiff has suffered great harm as a direct and proximate result of

6    Defendants' wrongful use of the ANT mark.

## JURY DEMAND

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL MATTERS SO
TRIABLE.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter the
following relief for Plaintiff:

1.   That Defendants, their officers, agents, servants, employees, affiliates, and all
persons acting for, with, by, through, or under them be permanently enjoined,
and if the circumstances of this matter so dictate, preliminarily enjoined as well:

a)   From using in any manner Plaintiff's mark, ANT, alone or in
combination with any word or words which resemble said service mark
as to be likely to cause confusion, mistake, or deception in connection
with the marketing, advertising, promotion, distribution, transmission,
offering for sale, and otherwise use of the mark;

b)   From passing off, reverse passing off, inducing, or enabling others to sell
or pass off any service produced by Plaintiff, as their own, or not
produced and approved by Plaintiff;

c)   From committing any acts calculated to cause the public and or
consumers of Plaintiff's services that Defendants' services are those
sponsored, endorsed, approved by, connected, or affiliated with,

Plaintiff's services;

d)   From further diluting and/or infringing Plaintiff's mark and otherwise damaging Plaintiff's goodwill and reputation;

e)   From otherwise competing unfairly with Plaintiff in any manner; and

f)   From assisting any other person or party in committing the acts described herein.

2.   That Defendants be prohibited from registering their mark, "ANT & DEC," or any confusingly similar derivation thereof, at the USPTO, or if said registration has already occurred, that it be cancelled forthwith;

3.   That Defendants account for and pay to Plaintiff any and all profits realized by Defendants due to their unlawful acts as alleged herein;

4.   That Plaintiff be awarded actual damages in an amount to be proven at trial and punitive damages, and that such damages be trebled thereof as provided by law due to Defendants' willful and intentional acts or practices;

5.   That Plaintiff be awarded reasonable attorneys' fees and costs; and

6.   That this Court order any further relief that it deems just and proper.


DATED:  August 22, 2011                    Respectfully submitted,
                                           Attorneys for ANT,

                                           FAGELBAUM & HELLER LLP

                                           By: /s/ Philip Heller
                                               Philip Heller LLP
                                               2049 Century Park East
                                               Suite 4250
                                               Los Angeles, CA 90067
                                               (310) 286-7666
                                               PH@fhllplaw.com
                                               California S.B. No: 113938

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF DANIEL A.
BATTERMAN

*/s/ Daniel A. Batterman*
Daniel A. Batterman, Esq.
100 Cambridge Street
Suite 1310
Boston, MA 02114
(617) 259-1600
DBatterman@BattermanLaw.com
MA B.B.O. No. 631268